**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JANE DOE I** and **JANE DOE II**, <br><br> Plaintiffs, <br><br> v. <br><br> **EDWIN CHAPARRO**, <br><br> Defendant. | Civil Action No. 25-13961 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon two motions: Plaintiffs Jane Doe I and Jane Doe II's Motion for Default Judgment ("Motion for Default Judgment," ECF No. 6); and *pro se* Defendant Edwin Chaparro's ("Defendant") informal Motion to Dismiss the Complaint ("Motion to Dismiss," ECF No. 12). Plaintiffs filed opposition to Defendant's Motion to Dismiss. ("Opp'n Br.," ECF No. 15.) Defendant did not submit a reply in further support of his Motion to Dismiss.

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Plaintiffs' Motion for Default Judgment and **DENY** Defendant's Motion to Dismiss.

1

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A.      BACKGROUND[1]

Defendant is Plaintiffs' father.  (Compl. ¶ 5.)  Defendant sexually assaulted and abused Plaintiffs multiple times between 1999 and 2001.  (*Id.* ¶¶ 6, 7.)

In 2001, Defendant was criminally indicted by an Atlantic County, New Jersey Grand Jury on: two counts of first degree aggravated sexual assault; two counts of second-degree sexual assault; two counts of second-degree endangering the welfare of a child; and two counts of fourth degree child abuse.  (*Id.* ¶ 8.)  Defendant pled guilty to two counts of second-degree sexual assault and was sentenced to a maximum of six years in prison.  (*Id.* ¶ 9.)  Defendant has since been released from prison.  (*Id.* ¶ 10.)

Defendant's abuse caused Plaintiffs harm that has impacted their education, work, relationships, and "virtually every aspect of their lives."  (*Id.* ¶ 12.)  Jane Doe I became deeply untrusting.  (*Id.* ¶ 13.)  Her family dynamic was destabilized. (*Id.*)  She struggled to contain her anger and constantly suffered from low self-esteem, rejection, depression, and anxiety.  (*Id.*)  Jane Doe II struggled with low self-esteem, depression, and anger.  (*Id.* ¶ 14.)  She also suffered from suicidal thoughts.  (*Id.*) Plaintiffs experienced negative impacts to how they interacted with others. (*Id.* ¶ 15.)  Because of Defendants' abuse, Plaintiffs allege that they have experienced substantial economic loss as well.  (*Id.* ¶ 16.)

### B.      PROCEDURAL HISTORY

Plaintiffs filed the Complaint on July 31, 2025.  (*See* ECF No. 1.)  Plaintiffs' Complaint asserts several causes of action against Defendants: sexual abuse; battery; assault; intentional

---

[1] For the purposes of these motions, the Court assumes as true the facts alleged in the Complaint.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (motion to dismiss); *DIRECTV v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (when considering a motion for default judgment, district courts are to assume facts alleged are true except those alleged as to damages).

infliction of emotional distress; negligence and/or gross negligence; negligent infliction of emotional distress; and punitive damages. (*See id.* ¶¶ 18–64.)

On August 26, 2025, Plaintiffs requested a Clerk's entry of default, which was entered the same day. (*See* ECF No. 5.) Thereafter, on September 11, 2025, Plaintiffs filed a Motion for Entry of Default Judgment. (*See* ECF No. 6.)

On September 16, 2025, Defendant filed a notice declaring that he will be proceeding *pro se*. (*See* ECF No. 8.) Defendant later filed a request for an extension to respond to the Complaint on October 20, 2025. (*See* ECF No. 10.) The assigned magistrate judge granted Defendant's request for an extension. (ECF No. 11.)

## II.    **MOTION TO DISMISS**

The Court first turns to Defendant's Motion to Dismiss.

### A.    **LEGAL STANDARD**

Rule 12(b)(6) permits a court to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

3

**B.      DISCUSSION**

On November 13, 2025, Defendant submitted the Motion to Dismiss.  (ECF No. 12.)  The informal Motion is not a model of clarity.  In his handwritten submission, Defendant outlines his monthly income.  (*See* Motion at 1.)  Defendant inquires why Plaintiffs are suing him now, instead of when he was "health[y] and working."  (*Id.*)  He states that he has served time in prison and expresses confusion as to what Plaintiffs "want."  (*Id.*)  To conclude his filing, Defendant asserts that "the extra time for [Plaintiffs' claims] is granted for churches and organizations [sic]."  (*Id.*)

In this action, Plaintiffs bring several claims against Defendant: sexual abuse; battery; assault; intentional infliction of emotional distress; negligence and/or gross negligence; negligent infliction of emotional distress; and punitive damages.  (*See* Compl. ¶¶ 18–64.)  All of Plaintiffs' claims stem from sexual abuse Plaintiffs began to suffer from when they were eight years old.  (*Id.* ¶¶ 6, 7.)

In 2019, the New Jersey Legislature amended the CSAA to permit plaintiffs to bring sexual assault claims as an adult, that would otherwise be time-barred, if the predicate act took place while the plaintiff was a minor.  *See* N.J. Stat. Ann. § 2A:14-2a.  This change in law extended the statute of limitations for any "injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act . . . , or sexual abuse" against a minor, *id.*, so that "'regardless of when the cause of action accrued, i.e., when it was reasonably discoverable that the sexual abuse of a child caused injuries, a complaint is timely if filed before the plaintiff reaches fifty-five years of age.'"  *Doe v. Hosbach*, Civ. No. 24-4756, 2025 WL 2444239, at *2 (D.N.J. Aug. 25, 2025) (quoting *W.S. v. Hildreth*, 268 A.3d 1038, 1043 (N.J. Super. Ct. App. Div. 2021), *aff'd*, 287 A.3d 421 (2023)).

Defendant appears to argue that Plaintiffs' tort claims should be dismissed on statute of limitations grounds.  (*See* Motion at 1 ("[T]he statute [of] limitation[s] is 7 year[s] why wait this long 20 years [t]o sue[.]".)

When dealing with an issue of the statute of limitations at the motion to dismiss stage, the Third Circuit has held that "the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in the motion to dismiss."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)).  An exception exists, only if

> the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." However, "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).

*Id.* (internal citations omitted).

Here, the Complaint alleges that Plaintiffs were eight years old when Defendant began to sexually abuse them.  (Compl. ¶¶ 6–7.)  Plaintiffs were also less than 55 years old at the time they brought the Complaint.  (*Id.* ¶ 11.)  Given that the time-bar under the CSAA is not apparent on the face of the Complaint, the aforementioned exception does not apply.

Defendant's Motion to Dismiss will therefore be DENIED.

## III.    MOTION FOR DEFAULT JUDGMENT

The Court will next address Plaintiffs' Motion for Default Judgment.

### A.    LEGAL STANDARD

Rule 55 governs default and default judgment.  *See* Fed. R. Civ. P. 55.  Pursuant to the Rule, the clerk must enter default against a party who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  After an entry of default, a plaintiff may seek default judgment under either Rule 55(b)(1) or Rule 55(b)(2).  *Doug Brady, Inc.*

*v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). However, "entry of default judgments is disfavored as decisions on the merits are preferred." *Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) (citing *Super 8 Motels, Inc. v. Kumar*, Civ. No. 06-5231, 2008 WL 878426, at *3 (D.N.J. Apr. 1, 2008)). In other words, the district court must remain mindful that entry of default "is a sanction of last resort." *Id.*

"In assessing whether the entry of default judgment is warranted, the court utilizes a three-step analysis, under which the Court must determine (1) whether there is sufficient proof of service[;] (2) whether a sufficient cause of action was stated[;] and (3) whether default judgment is proper[.]" *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 599–600 (D.N.J. 2016) (internal quotation marks omitted).

Moreover, before entering default judgment, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default judgment, and (3) the culpability of the party subject to default. *Sabinsa Corp. v. Prakruti Prods. Pvt. Ltd.*, Civ. No. 14-4738, 2023 WL 7298471, at *6 (D.N.J. Nov. 6, 2023) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71 (3d Cir. 1987)). An entry of default judgment is not a right that plaintiffs are entitled to and a "defendant's failure to appear

or answer does not vitiate the Court's responsibility to examine the complaint." *Paniagua Grp.*, 183 F. Supp. 3d at 600 (internal quotation marks omitted).

## B.  JURISDICTION

Before entering default judgment, the court must first make a "threshold determination" of whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the defendant. *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015); *TM Mktg. v. Art & Antiques Assocs., L.P.*, 803 F. Supp. 994, 997 (D.N.J. 1992).  The Court will address each in turn.

### 1.  Subject Matter Jurisdiction

The Complaint alleges several claims against Defendant: sexual abuse; battery; assault; intentional infliction of emotional distress; negligence and/or gross negligence; negligent infliction of emotional distress; and punitive damages.  (*See* Compl. ¶¶ 18–64.)  All of Plaintiffs' claims arise under the Child Sex Abuse Act ("CSAA"),  N.J.S.A. 2A:14-2a (2024).  Thus, this Court does not have subject matter jurisdiction under 28 U.S.C. § 1331.

Plaintiffs are residents of New Jersey.  (Compl. ¶¶ 1–2.)  Defendant is a resident of Florida. (*Id.* ¶ 3.)  Presuming that the matter in controversy could exceed the sum or value of $75,000, the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).

### 2.  Personal Jurisdiction

In addition to having subject matter jurisdiction over the claims, the Court must have personal jurisdiction over the Defendant.  *See Allaham*, 635 F. App'x at 36 ("While unlike subject matter jurisdiction, a court generally may not raise personal jurisdiction *sua sponte*, when a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects.").  A court may exercise personal jurisdiction over a defendant if it has the authority to do so from a source of positive law (such as a statute or rule of civil procedure) and if exercising jurisdiction would not violate "the outer limits" set by the Due Process Clauses of the

Fifth and Fourteenth Amendments. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 380–83 (3d Cir. 2022).

There are two distinct theories under which personal jurisdiction can arise: general and specific. *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). A court has general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks omitted). A court has specific jurisdiction when: (1) a defendant purposefully avails itself of the privileges of the forum state; (2) plaintiff's claim arises out of or relates to a defendant's contacts within the forum state, such that the defendant could "reasonably anticipate being haled into [the state's] court[s]"; and (3) comporting jurisdiction would not offend traditional notions of fair play and substantial justice. *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

Due process requires that a non-resident defendant have "fair warning" that a particular activity may subject him to jurisdiction through his own "purposefully directed" activities in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S, 462, 472 (1985). A proper showing of minimum contacts requires that the defendant's actions in the forum state create a "substantial connection" with the forum State, not merely random or fortuitous contacts. *Id.* at 475.

### a)        General Personal Jurisdiction

As a general principle, an individual, such as Defendant, is subject to the general jurisdiction of the forum state where he is domiciled. *See* 571 U.S. at 137. Because Plaintiffs allege in their Complaint that Defendant is a "citizen and resident of Florida," (Compl. ¶ 3), Defendant is not subject to the general jurisdiction of this Court.

8

b)        Specific Personal Jurisdiction

Having addressed that there is no general jurisdiction over Defendant, the Court must determine whether it has specific jurisdiction.  Specific jurisdiction over a non-forum state defendant, who has not consented to suit, exists if he "'purposefully directed' his activities at residents of the forum [state] and the litigation result[ed] from alleged injuries that 'arise out of or relate to' to those activities."  *Burger King Corp.*, 471 U.S. at 472 (internal citations omitted); *see also Ataman v. Parris*, Civ. No. 23-20994, 2024 WL 4289577, at *3 (D.N.J. Sept. 25, 2024). Additionally, "New Jersey allows for 'the exercise of personal jurisdiction over a nonresident defendant who commit[s] a single tortious act, whether negligent or intentional, within New Jersey."  *Id.* at *4 (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147 (3d Cir. 1992)); *see Carteret*, 954 F.2d at 148.

Plaintiffs allege that the tortious actions giving rise to their causes of action took place in their childhood home in New Jersey.  (Compl. ¶ 6.)  Defendant does not dispute that Plaintiffs' allegations—if taken as true—provide the Court with personal jurisdiction.  In fact, Defendant appears to admit to the acts, indicating that he "serve[d] 5 y[ea]r in prison and 18 years on CSL." (*See* Motion to Dismiss at 1.)  The Court finds that Defendant's contacts with New Jersey were sufficient such that he could reasonably anticipate having to defend a suit here.  *See Glitomer v. Rosefielde*, 726 F. Supp. 109, 110 (D.N.J. 1989) ("In order for an individual's contacts with a forum state to constitute the requisite 'minimum contacts,' the connection with the forum state must be sufficient so that the individual should reasonably anticipate being haled into court there.").  The Court thus accepts the allegations that the predicate acts with Defendant took place in New Jersey.  Accordingly, this Court has specific personal jurisdiction.

## C.    SERVICE

As stated, in addition to having subject matter jurisdiction over the claims and personal jurisdiction over the defendant, the Court must also consider whether process was properly served on Defendant, including whether there was sufficient proof of service, whether a specific cause of action was stated, and whether default judgment is proper.  The Court will address each in turn.

### 1.    Service of Process

The Court finds that Plaintiffs have provided sufficient proof of service.  The Federal Rules of Civil Procedure state that when serving and individual with a summons and complaint, service of process may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

In this case, service may be made according to the rules of New Jersey or Florida.  Here, the Affidavit of Service provided by Plaintiffs indicates that Defendant was personally served at 210 Douglas Avenue, Sebring, Florida.  (*See* Motion for Default Judgment, Ex. B.)  Nothing filed by Defendant contradicts Plaintiffs' affidavit of service.  Defendant does not dispute that this is his home.  Accordingly, the Court finds that there was sufficient service of process.

### 2.    Sufficient Cause of Action

Before entering default judgment, the Court must also review the Complaint and determine whether the "unchallenged facts constitute a legitimate cause of action." *DirecTV, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).  The Court must also accept Plaintiffs' "well-pleaded" allegations as true. *Comdyne I, Inc.*, 908 F.2d at 1146.

Here, the Court finds that Plaintiffs allege causes of action under CSAA.  (*See* Compl.) Plaintiffs allege the following claims against Defendant: sexual abuse; battery; assault; intentional

10

infliction of emotional distress; negligence and/or gross negligence; negligent infliction of emotional distress; and punitive damages. (*See id.* ¶¶ 18–64.) The Court will address each claim in turn.

### a)   Sexual Abuse

Plaintiffs' first claim is for sexual abuse under N.J. Stat. § 2A:61B-1. (*Id.* ¶¶ 18–22.) The CSAA defines "sexual abuse" as "sexual contact or sexual penetration between a child under the age of 18 years and an adult." N.J.S.A. 2A:61B-1(a)(1). The CSAA establishes two categories of abuses: active abusers who inflict the abuse, and passive abusers who "knowingly permit[ ] or acquiesces in sexual abuse by any other person." *Id.*

Here, Plaintiffs state a valid sexual abuse cause of action. Plaintiffs allege that Defendant sexually abused them between 1999 and 2001. (Compl. ¶¶ 6–7.) Plaintiffs pled that Defendant was indicted and charged for these sexual offenses, including two counts of first degree aggravated sexual assault and two counts of second-degree sexual assault. (*Id.* ¶ 8.) The Complaint alleges that Defendant pled guilty to two counts of second-degree sexual assault and was sentenced to prison. (*Id.* ¶ 9.) Drawing all reasonable inferences in favor of Plaintiffs, the Court finds these allegations are sufficient to plead a cause of action under the CSAA.

### b)   Battery

Count II of the Complaint asserts a claim for battery. (*See id.* ¶¶ 23–30.) Battery is an intentional tort. *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156, 161 (D.N.J. 2012). "Common-law battery is an intentional tort involving the harmful or offensive touching of a plaintiff's person without his consent." *Caldwell v. KFC Corp.*, 958 F. Supp. 962, 970 (D.N.J. 1997); *see also Bullock v. Cabasa*, Civ. No. 10-1412, 2014 WL 5286613, at *10 (D.N.J. Oct. 15, 2014); *Kelly v. Cnty. of Monmouth*, 883 A.2d 411, 415 (N.J. Super. Ct. App. Div. 2005). Thus,

the critical element of a battery claim is actual physical contact. *See Bullock*, 2014 WL 5286613, at *11; *Kelly*, 883 A.2d at 415.

Here, Plaintiffs allege a sufficient battery claim. Plaintiffs allege that Defendant "intentionally engaged in unlawful, intentional and offensive touching of Plaintiffs." (Compl. ¶ 25.) Plaintiffs specifically allege that they "did not consent to [Defendant's] actions[,]" (*Id.* ¶ 26), the "battery was committed without legal justification[,]" (*Id.* ¶ 27), and the "actions . . . constitute[d] intentional, nonconsensual touching" (*Id.* ¶ 28). As such, the Court finds these allegations sufficient to plead a cause of action for battery.

### c)    Assault

Next, the Complaint alleges a claim for assault. (*See id.* ¶¶ 31–39.)To assert a claim for common law assault, a plaintiff must plead the following elements: (1) that someone "act[ed] intending to cause a harmful or offensive contact with the [plaintiff], or an imminent apprehension of such a contact," and (2) that the plaintiff was "thereby put in such imminent apprehension." *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 299 (D.N.J. 2015) (citing *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)). Imminent apprehension of contact requires one to plausibly believe that "the act is capable of *immediately* inflicting . . . contact upon [the plaintiff] unless something further occurs." *Wilson*, 2023 WL 3452671, at *8 (quoting Rest. (2d) of Torts § 24) (emphasis in original) (internal quotation marks omitted)). Courts are "reluctant to protect extremely timid individuals from exaggerated fears of contact," thus requiring the apprehension to be of the sort normally "aroused in the mind of a reasonable person." *Powell v. Verizon*, Civ. No. 19-8418, 2019 4597575, at *11 (D.N.J. Sept. 20, 2019) (quoting *Wigginton v. Servido*, 734 A.2d 798, 806 (N.J. Super. Ct. App. Div. 1999)) (internal quotation marks omitted); *Wierzbicki v. City of Jersey City*, Civ. No. 19-17721, 2021 WL 4148105, at *9 (D.N.J. Sept. 10, 2021).

Here, the Court finds that, as pled, Defendant's actions would have plausibly placed a reasonable person in imminent apprehension of any contact. Plaintiffs allege that, through Defendant's offensive contact, Defendant caused "them imminent apprehension of such contact." (Compl. ¶¶ 35.) The assault was "done against [P]laintiffs' will and without consent." (*Id.* ¶ 37.) Such assertions are sufficient to support Plaintiffs' assault claims.

d)      Intentional Infliction of Emotional Distress

The Plaintiffs next allege a claim for intentional infliction of emotional distress. (*See id.* ¶¶ 40–44.) "Intentional infliction of emotional distress consists of 'extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another.'" *Lingar v. Live-In Companions, Inc.*, 300 N.J. Super. 22, 34 (App. Div. 1997) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988)) (quoting Restatement (Second) of Torts § 46 (1965)). To assert a valid intentional infliction of emotional distress claim, a plaintiff must allege the following elements: (1) conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (2) a deliberate act, committed with the intent to cause emotional distress or with deliberate disregard of a high probability that emotional distress would occur; (3) proximately causing emotional distress that is "so severe that no reasonable man could be expected to endure it." *Buckley*, 111 N.J. at 366 (quoting Restatement (Second) of Torts § 46, comments d and j (1965)); *see also Green v. City of Paterson*, 971 F. Supp. 891, 911 (D.N.J. 1997). Intentional infliction of emotional distress requires "an elevated threshold" which is "satisfied only in extreme cases." *Ingraham v. Ortho-McNeil Pharm.*, 422 N.J. Super. 12, 21 (App. Div. 2011).

In addition, a plaintiff must plead severe emotional distress amount to "severe and disabling emotional or mental condition[s] which may be generally recognized and diagnosed by trained professionals." *Turner v. Wong*, 832 A.2d 340, 348 (N.J. App. Div. 2003). A plaintiff

13

must plead something more than "[m]ere allegations of 'aggravation, embarrassment, an unspecified number of headaches, and loss of sleep.'" *Id.* (quoting *Buckley*, 544 A.2d at 864); *see also Krugman v. Mazie Slater Katz & Freeman, LLC*, Docket No. A-2611-13, 2015 WL 1880073, at *8 (N.J. App. Div. Apr. 27, 2015) (dismissing plaintiff's claim for intentional infliction of emotional distress, in part, for failure to plead how the alleged conduct affected her life or daily routine).

Here, the Complaint contains specific acts that Defendant individually perpetrated against Plaintiffs. The allegations put Defendant on notice of the conduct for which Plaintiffs bring their claims. Each element of intentional infliction of emotional distress is sufficiently alleged: (1) Defendant sexually abused his minor daughters (Compl. ¶¶ 5–10, 12–17, 41–44); (2) Defendant's conduct was extreme and outrageous (*Id.*); (3) Defendant's actions were the cause of Plaintiffs' distress (*Id.*); and (4) Plaintiffs' emotional distress was severe (*Id.*). Specifically, Jane Doe I "became deeply untrusting[,]" "battle[d] homelessness[,]" and suffered from "constant anger . . . low self-esteem, rejection, depression and anxiety." (*Id.* ¶ 13.) Jane Doe II likewise suffered from "low self-esteem, depression and anger" and even "contemplated and planned to commit suicide on multiple occasions." (*Id.* ¶ 14.) Plaintiffs "ha[ve], and will [ ], become obligated to expend significant sums of money for medical treatment, including mental health treatment." (*Id.* ¶ 43.) The allegations are clearly "so outrageous in character"—Defendant took advantage of his authority over his minor daughters and their trust to sexually abuse them for years in their childhood home. Such alleged conduct is sufficient to plausibly plead an intentional infliction of emotional distress claim.

e)   <u>Negligence and/or Gross Negligence</u>

Next, Count V of the Complaint alleges a claim for negligence and/or gross negligence. (*Id.* ¶¶ 45–51.) For negligence or gross negligence, a plaintiff must plausibly plead that "the

defendant breached a duty of care and that the breach was the actual and proximate cause of damages to the plaintiff." *K.J. V. J.P.D.*, Civ. No. 20-14177, 2023 WL 2387397, at *4 (D.N.J. Mar. 7, 2023) (quoting *Kinney Bldg. Assocs., L.L.C. v. 7-Eleven, Inc.*, Civ. No. 15-7917, 2016 WL 2855063, at *4 (D.N.J. May 16, 2016)).

"Whereas negligence is 'the failure to exercise ordinary or reasonable care' that leads to a natural and probable injury, gross negligence is 'the failure to exercise slight care or diligence.'" *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) (citation omitted). Thus, to establish a viable claim of gross negligence, a plaintiff must plead "something more than 'inattention' or 'mistaken judgment,'" but need "not [plead] willful or wanton misconduct or recklessness." *Id.* (citation omitted). In other words, a gross negligence claim can be maintained if a plaintiff shows that a defendant has displayed "an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." *Id.*; *see also In re N.J.A.C. 12:17-2.1.*, 160 A.3d 727, 738 (N.J. Super. Ct. App. Div. 2017) ("Although rigid classifications of the 'degrees of negligence have been abandoned' in our case law, the term 'gross negligence' is nonetheless still used when referring to 'the upper reaches of negligent conduct.'" (citing *Stelluti v. Casapenn Enterprises, LLC*, 975 A.2d 494, 508 n.6 (N.J. Super. Ct. App. Div. 2009))).

In this case, the Court finds that Plaintiffs have pleaded sufficient factual matter to support the inference that Defendant failed to exercise scant care or diligence and that Plaintiffs suffered natural and probable injury as a result of this failure.

Plaintiffs allege that they were minors who were owed a duty of reasonable care by Defendant. Plaintiffs claim that Defendant sexually abused them when they were minors, took advantage of his position of power over them and their trust, and wholly disregarded the duties he

15

owed as a father.  (*See* Compl. ¶¶ 5–10, 46–49.)  Such allegations amount to a sufficient gross negligence claim.

f)      <u>Negligent Infliction of Emotional Distress</u>

Next, Plaintiffs allege a claim of negligent infliction of emotional distress.  (*Id.* ¶¶ 52–57.) To establish a cause of action for negligent infliction of emotional distress, the defendant's negligence must have caused severe emotional distress.  *See Gendek v. Poblete*, 139 N.J. 291, 654 A.2d 970, 972 (1995).

This Court has determined that Plaintiffs have alleged a sufficient claim for gross negligence.  (*See infra.*)  Additionally, Plaintiffs have alleged that their emotional harm was severe. They both detail physical and psychological symptoms they suffer from and allege that they need therapy and other medical care.   As previously mentioned, Jane Doe I "became deeply untrusting[,]" "battle[ed] homelessness[,]" and suffered from "constant anger . . . [,] low self-esteem, rejection, depression and anxiety."  (Compl. ¶ 13.)  Jane Doe II also "struggled with low self-esteem, depression and anger[,]" and even "contemplated and planned to commit suicide on multiple occasions."  (*Id.* ¶ 14.)  Such allegations are a sufficient showing of severe emotional distress stemming from Defendant's gross negligence.

g)      <u>Punitive Damages</u>

Last, Plaintiffs allege a claim for punitive damages.  (*Id.* ¶¶ 58–64.)  Pursuant to the Punitive Damages Act, a plaintiff may be awarded punitive damages only when it is proven "by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a).  "The trier of fact determines whether punitive damages are warranted by

16

considering factors including the likelihood of serious harm at the time of the conduct, the defendant's awareness of the likelihood of serious harm, and concealment of the conduct by the defendant." *Bernard v. Cosby*, 648 F. Supp. 3d 558, 575 (D.N.J. 2023) (citing 2A:15-5.12(b)(1), (2), (4)).

Here, Plaintiffs allege that Defendant sexually abused them for years when they were minors. (Compl. ¶¶ 6–7.) Those allegations are sufficient to find Defendant's liability as Plaintiffs' claims for punitive damages.

### 3.   Whether Judgment is Proper

Next, the Court considers whether default judgment is proper. Here, Defendant is in default because he failed to substantively respond to the Complaint beyond asserting his meritless statute of limitations defense. As noted above, he also pled guilty to two instances of sexual assault against Plaintiffs. There is therefore nothing in the record to indicate that Defendant has any meritorious defenses. Such failure to defend weighs in favor of granting Plaintiffs' motion for default judgment. *See Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 829 (D.N.J. 2021). Moreover, Defendant's failure to litigate this action would leave Plaintiffs without a remedy to obtain damages that resulted from Defendant's conduct, should they choose to do so. Plaintiffs have been prejudiced insofar as they have been prevented from moving forward with the instant case. *See Trs. of the N.J. B.A.C. Health Fund v. Doran Tatrow Assocs.*, Civ. No. 18-16556, 2020 WL 525922, at *2 (D.N.J. Jan. 31, 2020). This prejudice weighs in favor of granting Plaintiffs' Motion. Accordingly, given that Plaintiffs satisfy all of the necessary requirements, the Court will **GRANT** Plaintiffs' Motion for Default Judgment and enter default judgment for Plaintiffs.

4.      Remedies

After finding default judgment proper under the circumstances, a court typically considers damages.  Here, however, Plaintiffs explicitly stated that they seek only default judgment on the issue of liability.  (*See* Motion for Default Judgment Br. at 1.)

## IV.    **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Plaintiffs' Motion for Default Judgment and DENY Defendant's Motion to Dismiss.  Plaintiffs will be given one week to file a proposed Order of Judgment as to liability, together with a cover letter advising whether they wish to pursue damages from Defendant.  An appropriate Order will follow.

Date: April 22, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

18